IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JORGE LUIS LEAL PACHECO,

    Petitioner,

v.                                     No. 1:26-cv-02173-KG-JFR

MARY DE ANDA-YBARRA, et al.,

    Respondents.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on Jorge Luis Leal Pacheco's Petition for a Writ of

Habeas Corpus, Doc. 1, the Government's Response, Doc. 6, and Mr. Leal Pacheco's Reply,

Doc. 7.  For the reasons below, the Court grants the petition and orders a bond hearing.

## I.    *Background*

Mr. Leal Pacheco, a native and citizen of Venezuela, entered the United States in 2023.

Doc. 6 at 1.  The Department of Homeland Security ("DHS") released him on parole under 8

U.S.C. § 1182(d)(5)(A), to last two years.  *Id.*  It also served him a Notice to Appear, charged

him as removable under 8 U.S.C. § 1182(a)(6)(A)(i), and granted him Temporary Protected

Status ("TPS"), which expired in 2025.  *Id.*; Doc. 1 at 6.

While released, Mr. Leal Pacheco maintained steady employment and complied with all

immigration requirements.  *Id.*  He has no criminal history.  *Id.*

On June 28, 2026, local law enforcement officers arrested Petitioner for allegedly driving

under the influence without headlights.  Doc. 6 at 2.  He was transferred to Immigrations and

Customs Enforcement ("ICE") custody shortly thereafter and remains detained at the Torrance

County Detention Center in New Mexico.  *Id.*

1

Mr. Leal Pacheco now challenges his continued detention. He contends that, because he has lived in the United States for years and is subject to full removal proceedings, his detention is governed by 8 U.S.C. § 1226(a). Doc. 1 at 17. He also argues that his detention violates the Fifth Amendment's Due Process Clause by depriving him of a protected liberty interest without an opportunity to be heard. *Id.* at 24. He seeks a writ of habeas corpus requiring that he be released, or, in the alternative, a bond hearing under § 1226(a). *Id.* at 27.

The Government opposes the petition. *See* Doc. 6. It argues that, because Mr. Leal Pacheco was paroled into the United States under § 1182(d)(5)(A), the revocation of his parole returned him to the status he held before: an applicant for admission at the border. *Id.* at 4–5. According to the Government, Mr. Leal Pacheco remains subject to detention under 8 U.S.C. § 1225, which does not provide for a bond hearing. *Id.*

## II.    *Legal Standard*

Federal courts have jurisdiction to review habeas petitions filed by noncitizen detainees alleging "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

The Immigration and Nationality Act ("INA") and its implementing regulations outline the appropriate procedures for the detention and removal of noncitizens without legal status in the United States. "Noncitizens who arrive at a port of entry without a visa or other entry documents...are deemed inadmissible under 8 U.S.C. § 1182(a)(7)." *Mendibaev v. Lyons*, 2026

2

WL 917457, at *3 (D.N.M.) (internal quotation marks and citation omitted).  Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of persecution."  *Id.* (citing § 1225(b)(1)(A)(i)).  The Government may place the noncitizen into expedited removal proceedings, *see* § 1225(b)(1), or place the noncitizen into regular removal proceedings under § 1229a.  *See id.*

Two provisions of the INA govern the detention of noncitizens pending removal proceedings.  *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).  First, § 1225 governs noncitizens detained at a port of entry or shortly after entry, who are treated as "[noncitizens] seeking admission into the country."  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020).  Absent exceptions irrelevant here, § 1225 "mandates detention and affords no bond hearing."  *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.).

By contrast, § 1226(a) sets forth "the default rule" for detaining noncitizens "already in the country."  *Jennings*, 583 U.S. at 303.  Section 1226(a) authorizes the arrest and detention of noncitizens, "on a warrant issued by the Attorney General...pending a decision on whether [they are] to be removed."  Under federal regulations, a noncitizen detained under § 1226(a) is entitled to an individualized bond hearing at the "outset of detention."  *Jennings*, 583 U.S. at 306.

Immigration parole is a narrow exception to the otherwise mandatory detention of noncitizens under § 1225(b)(1).  Under § 1182(d)(5)(A), a noncitizen applicant for admission who is ordinarily subject to mandatory detention under § 1225(b)(1) may be paroled into the United States pending the resolution of their immigration proceeding.  The discretionary decision to grant parole rests with the Secretary of Homeland Security, who may parole noncitizens to serve "urgent humanitarian reasons or significant public benefit."  § 1182(d)(5)(A).  "[W]hen the

3

purposes of such parole [], in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Immigration parole terminates automatically if the parolee departs the United States or the authorized parole period expires. 8 C.F.R. § 212.5(e)(1). Otherwise, termination of parole requires written notice. § 212.5(e)(2).

### III.    Analysis

For the reasons below, the Court concludes that (A) Mr. Leal Pacheco is subject to detention under § 1225(b), but (B) the Due Process Clause applies to Mr. Leal Pacheco and entitles him to a bond hearing.

#### A.    Mr. Leal Pacheco is subject to detention under § 1225(b).

To start, Mr. Leal Pacheco is subject to detention under § 1225(b). Parole does not constitute an admission into the United States—a parolee remains an applicant for admission even after parole is terminated or revoked. *See* § 1182(d)(5)(A); 8 C.F.R. § 1.2. So, "[a]n alien detained under [§ 1225(b)] who is released from detention pursuant to a grant of parole under [§ 1182(d)(5)(A)], and whose grant of parole is subsequently terminated, is returned to custody under [§ 1225(b)] pending the completion of removal proceedings." *Rincon v. Hyde*, 810 F. Supp. 3d 101, 109 (D. Mass. 2025) (quoting *Matter of Q. Li*, 29 I. & N. Dec. 66, 70 (BIA 2025)). Mr. Leal Pacheco was released into the country on parole, which expired in 2025. Doc. 6 at 1. Therefore, Petitioner reverted to his status as an applicant for admission and became subject to the detention provisions of § 1225(b). *See* § 1182(d)(5)(A) (providing that, upon termination of parole, the noncitizen's case "shall continue to be dealt with in the same manner as that of any

other applicant for admission").  At least one other court in this district has reached a similar

conclusion.  *See Mendibaev*, 2026 WL 917457 (Urias, J.).

### B.        *The Due Process Clause applies.*

Under the INA, Mr. Leal Pacheco is subject to detention under § 1225(b)—but that is not

the end of the Court's inquiry.  In addition to his statutory claim, Mr. Leal Pacheco asserts that

his continued detention violates the Due Process Clause because he has acquired a protected

liberty interest.  Doc. 1 at 24.  The Court agrees.

Courts analyze due process claims in two steps.  First, they evaluate whether a protected

liberty interest exists, and second, whether the procedures used to deprive that interest satisfy due

process.  *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.).

### 1.        *Mr. Leal Pacheco has a cognizable liberty interest because he has lived here for years.*

It is well-settled that the Due Process Clause grants protection to "all persons within the

territory of the United States."  *Wong Wing v. United States*, 163 U.S. 228, 238 (1896).

"Freedom from imprisonment—from government custody, detention, or other forms of physical

restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533

U.S. at 690.  Protection under the Due Process Clause extends to noncitizens "whether their

presence here is lawful, unlawful, temporary, or permanent."  *Id.* at 693.  The Supreme Court has

recognized that a noncitizen physically present in the United States may acquire a cognizable

liberty interest through "substantial connections" here.  *United States v. Verdugo-Urquidez*, 494

U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within

the territory of the United States and developed substantial connections with this country."); *see*

*also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (holding that noncitizens have a "weighty"

interest in their right "to stay and live and work in this land of freedom" and to "rejoin...immediate family").

Under these principles, Mr. Leal Pacheco has established a protectable liberty interest through his years residing in the United States. That interest became stronger as he maintained stable employment and developed community ties. His detention has severed those ties and deprived him of the liberty interest protected by the Due Process Clause. *See Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting).

The Government argues that Mr. Leal Pacheco has no entitlement to any legal protections, constitutional or otherwise, other than those prescribed by Congress. Doc. 6 at 2–3. It relies on *Thuraissigiam*, 591 U.S. at 139, *see id.*, but that reliance is misplaced. In *Thuraissigiam*, a noncitizen who was apprehended 25 yards inside the United States challenged his expedited removal and denial of asylum on due process grounds. *Thuraissigiam*, 591 U.S. at 114–15. The Supreme Court rejected his claims, applying the "entry fiction" doctrine, under which certain noncitizens physically present in the United States are treated, for due process purposes, as if stopped at the border. *Id.* at 139–40. The Supreme Court declined to grant constitutional significance to the 25 yards at issue. *Id.* ("[A]n alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry.'"). Rather, it concluded that "an alien in [the noncitizen's] position has only those rights regarding admission that Congress has provided by statute." *Id.* at 138; *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 213 (1953) (holding that a noncitizen detained on Ellis Island remained an "entering alien" and that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned"). Applied here, *Thuraissigiam* makes clear that Mr. Leal Pacheco's

6

due process rights *regarding his admission into the country* are limited to those authorized by Congress.

But Mr. Leal Pacheco's case differs from *Thuraissigiam* in two ways that limit its applicability to his due process claim. First, unlike the petitioner in *Thuraissigiam*, Mr. Leal Pacheco does not challenge an admission determination. The petitioner there sought vacatur of his removal order and a new opportunity to apply for asylum—relief implicating Congress's "sovereign prerogative" to decide which noncitizens to admit. *Id.* at 140. The Court rejected that claim in part because the requested relief intruded on Congress's plenary authority over the admission of noncitizens into the United States. *Id.*

Instead, Mr. Leal Pacheco challenges the constitutionality of his detention, a question squarely within this Court's habeas power. *See Zadvydas*, 533 U.S. at 687 (recognizing jurisdiction over habeas petitions alleging custody "in violation of the Constitution or laws...of the United States" (quoting 28 U.S.C. § 2241(c)(3))). *Thuraissigiam* itself reaffirmed that habeas "is the appropriate remedy to ascertain...whether any person is rightfully in confinement or not." 591 U.S. at 117 (citation and internal quotation marks omitted). Thus, the relief Mr. Leal Pacheco seeks is parallel to, rather than in conflict with, Congress's plenary authority over admission. *See Rincon*, 810 F. Supp. 3d at 113.

Second, Mr. Leal Pacheco's circumstances differ from those in *Thuraissigiam* because he has resided in the United States for years. The petitioner in *Thuraissigiam* made it 25 yards into the country—"the functional equivalent of a cartographic rounding error," to which the Supreme Court declined to assign constitutional significance. *Rincon*, 810 F. Supp. 3d at 111. Applying the entry fiction to Mr. Leal Pacheco's circumstances would "require[] a much greater sleight of hand." *Id.* at 112. While Congress, under its sovereign prerogative, may define or limit statutory

rights collateral to admission, it may not extinguish protections that arise from the Constitution. *Id.* Indeed, *Thuraissigiam* itself described the entry fiction as applying to noncitizens "who have never been naturalized, *nor acquired any domicil [sic] or residence within the United States*, nor even been admitted into the country pursuant to law." 591 U.S. at 138 (emphasis added). Mr. Leal Pacheco does not fall into that group because he *has* resided here—and his ties afford him rights that the entry fiction cannot erase.

### 2.     *Under the Due Process Clause, a bond hearing is warranted.*

Because the Due Process Clause affords Mr. Leal Pacheco a liberty interest, the Court next determines what process is due. In the immigration context, courts apply the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *Landon*, 459 U.S. at 34; *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990). Under *Mathews*, the Court balances (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures. 424 U.S. at 335.

Turning to the first *Mathews* factor, the Court finds that Mr. Leal Pacheco has a significant private interest in remaining free from detention after living outside of physical custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. As mentioned above, Mr. Leal Pacheco was free from physical custody for approximately three years before he was redetained, and his interest in his liberty grew stronger as he worked and lived within his community. His private interest in freedom from arbitrary or unlawful physical custody is substantial.

8

The second *Mathews* factor also favors Mr. Leal Pacheco.  The risk of erroneous deprivation is high because mandatory detention does not adequately protect his interest in freedom from arbitrary physical restraint.  Detention must "bear[ ] a reasonable relation to the purpose[s] for which the individual was committed."  *Id*. at 690–91 (internal quotation marks omitted) (construing 8 U.S.C. § 1231 to avoid the constitutional concerns raised by indefinite detention).  Yet § 1225(b) provides no mechanism for determining whether detention is justified in light of Mr. Leal Pacheco's individual circumstances.  On the other hand, as the Government points out, Mr. Leal Pacheco is subject to mandatory detention under the statute.  *See* Doc. 6 at 3.  Therefore, "the equities tip in favor of a bond hearing, rather than release, where the Petitioner still bears the burden of showing why release on bond is warranted in this case."  *Mendibaev*, 2026 WL 917457, at *7.  This ensures Mr. Leal Pacheco "is not erroneously deprived of his liberty interest in release" while "recognizing that detention is mandated by the statute."  *Id.*

Finally, the third *Mathews* factor favors Mr. Leal Pacheco.  While the Government has a strong interest in enforcing its immigration laws, its interest in detaining noncitizens absent an individualized justification for doing so is low.  *Id.*  The Government previously determined that Mr. Leal Pacheco could pursue his immigration case while at liberty, and it has identified no material change in circumstances that would justify a different conclusion today.  The Court recognizes that providing Mr. Leal Pacheco a bond hearing necessarily entails an "administrative burden[]."  *See Mathews*, 424 U.S. at 335.  But "[c]ourts generally have found that the cost of providing a bond hearing is relatively minimal."  *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, 2025 WL 1158841, at *9 (E.D. Cal.) (citing cases).  And because Mr. Leal Pacheco's removal proceedings will continue regardless of his detention status, a bond hearing does not interfere with the Government's "sovereign prerogative...to decide which [noncitizens] to admit."

*Landon*, 459 U.S. at 32.  Nor does this Order affect the Government's authority to detain Mr.

Leal Pacheco after a final order of removal issues.  *See* § 1231(a).  In sum, all three *Mathews*

factors weigh in favor of Mr. Leal Pacheco, and he is therefore entitled to an individualized bond

hearing.

## IV.    *Conclusion*

For the reasons above, the Petition for Writ of Habeas Corpus, Doc. 1, is granted.  The

Court orders:

1. Within 14 days of this Order, the Government shall provide Mr. Leal Pacheco with an individualized bond hearing before an immigration judge.

2. At the hearing, Mr. Leal Pacheco bears the burden of proving by a preponderance of the evidence that conditions of release would adequately address any risk of flight or danger to the community.

3. If a bond hearing is not provided within 14 days, Mr. Leal Pacheco shall be released under the same conditions that governed his release immediately prior to detention.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.